IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY F. BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-02-575-F |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Mary F. Buchanan ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated this claim for disability insurance benefits in December, 1995, alleging that she suffered from a spinal condition [Tr. 118 - 121 and 147]. She further maintained that resulting pain and limitations in bending, stooping, reaching and lifting became disabling as of February, 1995 [Tr. 147]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 74 - 76 and 78 - 80]. At Plaintiff's request, an Administrative Law Judge ("ALJ") conducted an August, 1997, hearing where Plaintiff,

who was represented by counsel, and a vocational expert testified [Tr. 60 and 81]. In his October, 1998, decision the ALJ found that Plaintiff was not disabled because she was able to perform her past relevant work [Tr. 60 - 68]. The Appeals Council of the Social Security Administration denied Plaintiff's request for review, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 94 - 95].

Because a tape of the administrative hearing was missing, the Commissioner was unable to produce a transcript and, on July 9, 2002, was granted a remand by the court so that a search could be made for the tape and a new hearing held if the tape was not located [Tr. 69 - 73]. A new hearing was subsequently ordered by the Appeals Council [Tr. 105 - 106] and conducted in September, 2003 [Tr. 36 - 54]. The ALJ found by decision issued in November, 2003, that Plaintiff was not under a disability prior to September 30, 1999, the date on which she last insured for benefits, because she was able to perform work which was available in significant numbers in the national economy [Tr. 23 - 32]. Upon consideration of Plaintiff's exceptions to the ALJ's decision, the Appeals Council found the exceptions untimely; consequently, the ALJ's decision became the final decision of the Commissioner [Tr. 8 - 9]. *See* 20 C.F.R. § 404.984 (a). In September, 2004, the court granted Plaintiff's unopposed motion to reopen the case [Doc. No. 11], and the matter has now been fully developed.

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart,*

331 F.3d 758, 760 (10th Cir. 2003). However, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is far from superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520(b)-(f) (2000); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512 (2000); *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.

1984). In this case, the ALJ determined that Plaintiff could not perform her past work and continued the inquiry through the fifth step.

**Plaintiff's Contentions and Analysis of the ALJ's Decision**

Plaintiff argues, first, that the ALJ did not properly apply the treating physician rule and, second, that the ALJ failed to correctly assess Plaintiff's alleged symptoms, particularly her alleged pain. Reversal of the ALJ's decision and remand of the matter is recommended because the ALJ committed legal error in his analysis of the opinion of Plaintiff's treating physician and in his evaluation of Plaintiff's credibility. Because the ALJ's errors are primarily ones of law, only a limited summary of the evidence in the voluminous transcript is necessary. Moreover, much of the evidence in the transcript post-dates the date on which Plaintiff was last insured for disability benefits,[1] and a consideration of such evidence is not warranted. Plaintiff's claims will be addressed in inverse order.

**Credibility**

The ALJ found that Plaintiff – fifty-eight years old, with a high school education and with past relevant work as a medical assistant, an apartment manager and a secretary – was severely impaired by multi-level cervical and lumbar degenerative disc disease and by left carpal tunnel syndrome [Tr. 24 and 27]. Following review and evaluation of the medical evidence, the ALJ started his assessment of Plaintiff's residual functional capacity ("RFC") by first considering the credibility of Plaintiff's claim that she was disabled by pain resulting from her impairments [Tr. 25 - 27].

---

[1] September 30, 1999 [Tr. 24].

The ALJ began by reciting Plaintiff's testimony that she was unable to work physically or emotionally and that her treatment from 1995 to 1999 consisted of epidurals, physical therapy and medication [Tr. 27]. The ALJ also noted Plaintiff's testimony that proposed surgery was delayed until 1999. *Id.* Also referenced by the ALJ was Plaintiff's indication that the surgery alleviated the pain in her head only; that "[s]he was told that she could not lift so much as a purse and does not carry a purse now" and, that "her problems began in 1976 when she fell down some stairs." *Id.*

The ALJ then determined that Plaintiff's allegations of disabling pain and discomfort were not supported by credible facts and findings from which he could conclude that Plaintiff had an impairment which could reasonably be expected to cause the degree of pain and discomfort which she alleged. *Id.* He referenced a report dated April 10, 1996, which indicated that Plaintiff had experienced an excellent response to both lumbar and cervical epidural steroid injections over the past two years [Tr. 361]; also mentioned was a March 9, 1999, report indicating that Plaintiff had probably had ten injections altogether [Tr. 745].

As additional findings in his credibility assessment, the ALJ noted that while Plaintiff had been scheduled for a discogram in May, 1996, she did not actually have this procedure "until May, 1999, some three years later, which suggests the symptoms may not have been as severe as alleged." [Tr. 27 - 28]. The ALJ further observed that Plaintiff underwent cervical surgery in May, 1999, with her doctor reporting on June 30, 1999, that Plaintiff had received excellent results from her surgery and was free of neck, shoulder and arm pain [Tr. 28 and 731]. Likewise, in September, 1999, her doctor

reported that Plaintiff had recently had her sixth grandchild and was now able to lift and play with the younger grandchildren and was very happy [Tr. 28 and 729]. The ALJ concluded that although Plaintiff did experience some pain and discomfort, it neither rose to a level of severity nor was of such duration and intensity as to preclude Plaintiff from engaging in all substantial gainful employment before September 30, 1999, the date she was last insured for benefits [Tr. 28].

In the case of *Hamlin v. Barnhart,* 365 F.3d 1208, 1220 (10th Cir. 2004), the claimant argued, as does Plaintiff here, that the ALJ erred in assessing claimant's allegations of disabling pain and, consequently, in assessing claimant's RFC. The court agreed, providing the following summary of applicable law:

> "[T]he claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Thompson* v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citations omitted). Next, the claimant must show '"there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and ... if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan,* 966 F.2d 1371, 1376 (10th Cir.1992). While "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, ... a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Luna v. Bowen,* 834 F.2d 161, 165 (10th Cir. 1987). In the course of determining the credibility of a claimant's statements regarding pain, an ALJ should consider
>> 1.[t]he individual's daily activities; 2.[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4.[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5.[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6.[a]ny measures other than treatment the individual uses or has used to relieve pain or

>    other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>    
>    7.[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. Rul. 96-7p, 1996 WL 374186 at*3. *See also Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988) (listing other factors including "frequency of medical contacts, ... subjective measures of credibility that are particularly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence"). In summary, an ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* at 1133.

Here, the ALJ's findings indicate that Plaintiff had a proven impairment [Tr. 27] which caused her to "experience some pain and discomfort" [Tr. 28], thus satisfying the "loose nexus" test. Accordingly, the ALJ was then required to consider the above-listed factors in order to determine from all of the evidence – both objective and subjective – whether Plaintiff's pain was so severe as to have been totally disabling. This the ALJ failed to do.

No reference, for example, was made to Plaintiff's daily activities during the relevant time period,[2] activities which were described in the October 28, 1998, decision from the first administrative hearing:

>    Concerning her daily activities, the claimant testified that on an average day she gets up between 9:00 - 10:00 a.m., has a cold breakfast, takes a bath, takes a nap, eats lunch, watches TV, reads, writes, and spends a lot of time alone. She testified that she cooks one meal a day (dinner) and does household chores, but that she cannot mop or vacuum. She testified that she reclines or lies down between 14 - 15 hours a day. She testified that she drives, but only for trips to the doctor, physical therapy, and the grocery store.

---

[2]The relevant time period runs from the alleged date of onset, February, 1995, until the date on which Plaintiff was last insured for benefits, September 30, 1999.

7

[Tr. 65]. At the second hearing, Plaintiff also testified that during the relevant time period she was unable to stand and cook so she had to use a drafting chair to sit in and move around the kitchen [Tr. 45]. She also related difficulty in grasping objects such as a steering wheel and in experiencing a lack of feeling in her fingers. *Id.* As to medications and other methods which she utilized to relieve her symptoms, Plaintiff testified that she received "[e]pidurals as needed, physical therapy three times a week, and medication as needed, narcotics [;] [a]nything that would stop the pain, help the pain." [Tr. 40]. The location, duration, frequency, and intensity of Plaintiff's alleged pain were not discussed in the current decision but the first ALJ stated that Plaintiff had testified "that she has constant pain 'from the top of my head to the bottom of my feet,' and that she has had this pain since she fell down stairs in the mid 1970's." [Tr. 65].

Instead of discussing these factors and applying the evidence in the record in assessing whether Plaintiff's reports were credible, the ALJ in the decision now on review focused exclusively on medical evidence[3] to determine the severity of Plaintiff's pain, concluding that the pain was not as severe as Plaintiff claimed because (1) she received an excellent response to her ten epidural steroid injections; (2) she postponed a discogram for three years and (3) cervical surgery performed near the end of her insured period left her free of neck, shoulder and arm pain [Tr. 27 - 28]. While these facts might

---

[3]The Commissioner argues that the ALJ noted the observations of a consultative examining physician suggesting that Plaintiff appeared to exaggerate her symptoms [Tr. 26 - 27]. While the ALJ did, in fact, report these findings, he did not do so in the context of his assessment of Plaintiff's credibility. Other evidence in the record also belies Plaintiff's reports of constant and disabling pain – driving to Dallas in 1996 and standing in line for three hours at Planet Hollywood [Tr. 363]; carrying a twenty-seven pound chunk of glass three blocks in 1998 [Tr. 386] – but the court may only review those findings actually made by the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)

indicate that Plaintiff ultimately had a successful result from surgery and that she was able to enjoy a positive response to steroid injections, they are not evidence of the degree of pain which motivated Plaintiff to have the injections[4] and surgery in the first place. On remand, the ALJ should consider and discuss the factors outlined above in order to properly assess the credibility of Plaintiff's statements regarding pain.

### Treating Physician Opinion

Plaintiff contends that the ALJ further erred in his assessment of the February 11, 1998, opinion of Dr. Hope, Plaintiff's treating pain management physician. The ALJ gave the following synopsis of that opinion:

> A report of Dr. Hope dated February 11, 1998 indicated the claimant had significant bulging of discs but no active radiculopathy. However, she is severely limited in the use of her arms and legs, especially for extended periods and demanding or repetitive activities. Her primary limitation is that of pain and stiffness when she is overactive. She has decreased ability to drive, stand, lift, sit for extended periods, etc. as [has] been outlined by [Dr. Hope] in the past."

[Tr. 28].

In discussing Dr. Hope's opinion, the ALJ correctly noted his obligation to give controlling weight "to a treating source's medical opinion if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." [Tr. 28]. In making such assessment, the ALJ determined:

> Dr. Hope reported on February 11, 1998 the claimant had significant bulging of discs. However, this is contrary to the evidence of record. MRI in November 1994 revealed no focal disc protrusions, and myleogram in

---

[4]Neither does the fact that Plaintiff had a positive response to steroid injections reveal the duration of relief from pain.

>December 1995 revealed no evidence of lumbar disc herniation. MRI in May, 1996 revealed multi-level degenerative disc disease but no focal disc protrusion. [ ] Dr. Lawton, consultative examiner, reviewed the laboratory tests of record in January 1998 and concluded there was no evidence of compromise of any nerve root or of the spinal cord. Dr. Hope reported on March 9, 1999 that she had been treating the claimant since 1994 for degenerative disc disease and that she had generally done well with the steroids and had probably had about ten injections altogether over the years. Dr. Hope indicated at that point the claimant wanted to resume her cervical workup and indicated her MRI was five years old. [ ] A review of Dr. Hope's treatment records does not indicate the limitations that she referred to in her February 11, 1998 report. The undersigned has considered the opinion of Dr. Hope; however, since it is inconsistent with the other substantial evidence of record and is not supported by clinical and laboratory finds, it is not afforded controlling weight.

[Tr. 28 - 29].

With regard to the ALJ's conclusion, Plaintiff makes the following arguments[5]: the ALJ's focus upon surgery, which is often inappropriate for degenerative disc disease, is misplaced; the ALJ never addressed the issues Dr. Hope raised in her 1998 report concerning the consultative physician's interpretation of the medical record; the medical evidence from Dr. Hope is entirely consistent because Plaintiff has repeatedly had MRI, CT and myleogram studies confirming degenerative disc disease [Doc. No. 19, Opening Brief, pages 8 - 9], and the ALJ "did not provide specific, legitimate reasons for his rejection of the treating physician's opinion that Plaintiff has multi-level cervical and lumbar disc disease." *Id.* at 9 - 10.

Addressing each of Plaintiff's arguments in turn and beginning with the contention that the ALJ's focus upon surgery was misplaced, the undersigned finds that the ALJ's treating physician analysis did not even mention whether surgery was properly indicated

---

[5]Additional contentions not listed here pertain to developments after the expiration of Plaintiff's insured status.

for Plaintiff. Accordingly, Plaintiff's contention that the analysis was faulty because of the ALJ's focus on the issue is unavailing. Equally unpersuasive is the claim that the evaluation of Dr. Hope's opinion was deficient due to the ALJ's failure to discuss Dr. Hope's response to the consultative physician's interpretation of the medical records. In this regard, Dr. Lawton, the consultative physician, noted that he had reviewed around two hundred pages of Plaintiff's medical records, many of which were physical therapy records [Tr. 378]. Dr. Hope's February 11, 1998, letter responding to Dr. Lawton's report provided that "[t]he physical therapy notes which Dr. Lawton refers to actually document in considerable detail numerous musculoskeletal restrictions which have been present over time." [Tr. 385]. This statement by Dr. Hope does not "reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [Plaintiff's] symptoms, diagnosis and prognosis, what [Plaintiff] can still do despite impairment(s), and [Plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527 (a) (2). At most, it is a statement by Dr. Hope that musculoskeletal restrictions have been noted by a physical therapist and is not an opinion by Dr. Hope about the severity of Plaintiff's impairment or any resulting limitations.

Plaintiff's next contention is that the medical evidence from Dr. Hope is entirely consistent and that "[r]epeatedly, [Plaintiff] has MRI, CT and Myelogram studies confirming degenerative disc disease, she is referred for physical therapy time and time again and has had at least 13 cervical and lumbar epidural steroid injections [and] [a]ll of these facts must be afforded controlling weight." [Doc. No. 19, Opening Brief, pages 8 - 9]. In this same vein, Plaintiff's final claim is that the ALJ "did not provide specific,

legitimate reasons for his rejection of the treating physician's opinion that Plaintiff has multi-level cervical and lumbar disc disease." *Id.* at 9 - 10. Plaintiff has failed to show through these arguments how the ALJ improperly analyzed any judgment by Dr. Hope, particularly Dr. Hope's judgment that Plaintiff suffered from multi-level cervical and lumbar degenerative disc disease, as this was, in fact, one of Plaintiff's impairments as determined by the ALJ [Tr. 27].

The ALJ initially followed the proper sequential analysis in determining whether Dr. Hope's opinions in the February 11, 1998, letter were entitled to controlling weight. He found that Dr. Hope's assessment that Plaintiff had significant bulging of the discs was inconsistent with the other medical evidence in the record, noting such evidence with specificity [Tr. 28]. He also specifically stated that he had reviewed Dr. Hope's treatment records and had found no indication of the limitations to which she referred in her notes, thus finding lack of support for the limitations. *See* 20 C.F.R. § 404.1527 (d) (2). Nonetheless, while it can be presumed that the ALJ rejected the opinions completely, he stated only that he was not giving them controlling weight and failed to continue the required sequential process. *Id.* The ALJ failed to explicitly weigh the factors prescribed by the regulations and to explain the weight, if any, which he was assigning to Dr. Hope's opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 - 1301 (10th Cir. 2003). Remand is necessary in order that the ALJ may specifically articulate the reasons for the weight, if any, which he is ascribing to Dr. Hope's opinions.[6]

---

[6] In connection with the proceedings on remand, it appears that all evidence necessary to the further consideration of Plaintiff's alleged disability prior to the date she was last insured for benefits – September 30, 1999 – is already in the record and is available for reevaluation under the proper legal standards discussed in this report.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings. The parties are advised of their right to object to this Report and Recommendation by April **20**, 2005, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this **31** day of March, 2005.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE